# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-4075-01-CR-C-NKL |
| | ) | |
| MICHAEL DELANE AMMERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

On November 8, 2007, defendant Michael D. Ammerman filed a motion to suppress the evidence seized on September 21, 2006, and all subsequent statements he made. The issues were briefed and on January 16, 2008, a hearing was held.[1]

The credible evidence at the hearing shows law enforcement officers in Morgan County, Missouri, received information of suspected drug activities at 28592 Jewell Road. Jeanette Penny McDonough and William Armstrong were living in the house, which was owned by McDonough's relative, Florence Penny. Based upon the information, officers obtained and executed a search warrant at that residence on September 21, 2006. Defendant Ammerman was not a target of the warrant, but was known by officers to have a drug-related criminal history.

While Deputy J.D. Williams was inside the residence, a cell phone rang at approximately 4:50 p.m. Williams answered the phone by saying something like, "hello." The caller did not identify himself, but stated he had been trying to reach him. The men held a short conversation about getting together, and they ended with the caller telling Williams to come outside and meet him, because he'd be there shortly. The caller did not know he was talking to Williams, a law enforcement officer. For several reasons, Williams believed the caller was referring to a drug deal and was coming to the house to deliver drugs.

---

[1]This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

Williams went outside and told the officers who were providing outdoor security to watch for a vehicle coming toward the house because he believed a drug delivery was being attempted. Two of the officers in the area were Detective Darin Lutz and Chief Deputy Salzman.

The house on Jewell Road is in a rural setting, and Jewell Road is a narrow, single-lane roadway. It is not wide enough to allow vehicles to pass each other and is posted as a one-way road. To reach southbound Jewell Road or southbound Johnson Road, a vehicle has to travel north on Jersey Road.

During the search and while officers were watching for the caller to arrive, law enforcement vehicles were parked in the roadway in front of the residence. As a result, Jewell Road was blocked.

Shortly after being advised of the telephone call, officers who were on Jewell Road saw a red pickup truck traveling north on Jersey Road. It was the only vehicle seen traveling in the area at the time, and it did not turn down Jewell Road, but turned on Johnson Road.

Missouri State Water Patrol Officer Jason Worthley saw the pickup truck. He had been advised by Salzman to attempt to identify anyone who approached the house. The pickup was the only vehicle seen traveling in the area after the telephone call, and it was possible the driver could have seen the law enforcement vehicles blocking Jewell Road because they were visible from Jersey Road. Although he lost sight of the vehicle for a short time, Worthley got into his own vehicle and followed the path he believed the truck had taken. When he found the truck at Moffett Point Road and Highway P, he stopped it.

The driver was defendant Michael Ammerman. Ammerman responded to the officer's questions, and said he had been going to see Armstrong, that Armstrong's wife was in jail and he was going through a hard time. Worthley could smell a strong odor of marijuana in the truck, and after running a check on the driver and vehicle, requested consent to search it. Ammerman consented to a search. When nothing illegal was found, Worthley let Ammerman leave the area.

Worthley testified it had rained off and on all day, heavily at times, but that it was not raining at the time of the traffic stop. During the traffic stop, Worthley communicated with Morgan County personnel by radio, and other officers who were monitoring the radio were aware Ammerman had been stopped.

Officer Lutz knew Ammerman had a drug history. When he heard Ammerman had been stopped, he decided to walk down the road where the truck had traveled. He got into his vehicle, went to the intersection, parked and then began to walk down Johnson Road. As he walked, he saw a light colored towel near a utility pole. The towel was folded up and dry. Lutz carefully unfolded the top, and found what appeared to be marijuana and other substances. He notified officers by radio that he had found something and requested they send someone from the drug task force. He also checked at the two nearby homes, and did not find anyone at home.

By the time the towel was found, Ammerman had been released from the traffic stop. Based upon the information available to them, Salzman and someone from the drug task force made a decision to arrest Ammerman. Officers were notified to watch for Ammerman and arrest him if he was seen. Later that evening, Ammerman was arrested by an officer in Versailles, Missouri.

Defendant Ammerman asserts that at the time of his warrantless arrest, officers lacked probable cause to believe he had committed a crime.

Officers have probable cause to make a warrantless arrest when they have trustworthy information that would lead a reasonable person to believe the suspect has committed a crime. United States v. Cardenas-Celestino, ___ F.3d ___, 2008 WL 34811 (8th Cir. Jan. 8, 2008). The court looks to the totality of the circumstances, and gives due weight to the inferences police officers could draw from their general experience. United States v. Sherrill, 27 F.3d 344, 347 (8th Cir. 1994). There does not have to be an actual showing of criminal activity, but there must be "a probability or substantial chance of criminal activity." United States v. Torress-Lona, 491 F.3d 750, 756 (8th Cir. 2007).

In this case, officers had probable cause, at the time of his arrest, to believe Ammerman had committed a crime. During a drug investigation and search at the Armstrong residence, officers received a telephone call where the caller indicated he was coming by the residence and the person answering the phone should come out to the vehicle. The general tone of the conversation led the officers to believe that a drug transaction was being scheduled.

Officers watched for a vehicle, and the only vehicle seen traveling in the area was a red pickup truck. It was on the only road allowing access to Jewell Road. The truck didn't turn down Jewell Road, which was blocked in front of the residence, but turned down Johnson Road.

3

An officer followed it and made a stop to identify the driver. The stop for further investigation was justified by reasonable suspicion that the occupant was engaged in criminal activity. Once the driver was identified, other officers learned by radio that it was defendant Ammerman. Officers knew Ammerman had a criminal history related to drugs. With Ammerman's consent, his truck was searched and when no contraband was found, he was allowed to leave. His admission that he was going to visit Armstrong is thus admissible.

Officer Lutz knew of Ammerman's criminal history. He inferred from his law enforcement experience that contraband might have been tossed from the truck if Ammerman had seen the officers' vehicles and decided to abort a drug delivery. He decided to walk down the road the truck had traveled. When he did so, he found a dry towel near a utility pole. It had rained earlier in the day, and officers could infer that the dry towel indicated it had not been there long. When it was examined, the towel contained illegal drugs.

Ammerman's truck was the only one seen traveling on the road near the time of the find and after the last significant rain. There were no drugs in the truck when it was searched, although it smelled strongly of marijuana. Ammerman had told Officer Worthley that he had been headed to Armstrong's house, even though he had not turned down Jewell Road. Thus, officers could reasonably infer that Ammerman had made the call, aborted his visit when he saw law enforcement vehicles in the area, and tossed the drugs as he traveled out of the area.

Given the totality of the circumstances, including Ammerman's known criminal history, his admission that he was headed to the house being searched because of suspected drug activity, the drugs found on the path he had driven and the other factors set forth above, the court finds officers had probable cause to believe Ammerman had engaged in criminal activity and to make a warrantless arrest. Accordingly, it is

RECOMMENDED that defendant Michael D. Ammerman's motion of November 8, 2007, to suppress evidence be denied. [45]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. See Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985));

Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983). Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 31st day of January, 2008, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge