IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-04075-CR-C- NKL |
| | ) | |
| MICHAEL DELANE AMMERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Defendant Michael D. Ammerman ("Ammerman") is charged with one count of

conspiracy to distribute methamphetamine; one count of possession of marijuana; and,

one count of possession with intent to distribute methamphetamine. On January 31, 2008,

United States Magistrate Judge William A. Knox recommended that the Court enter an

Order denying Ammerman's Motion to Suppress [Doc. # 45]. See Report and

Recommendation [Doc. # 57]. The parties were advised that they could file written

exceptions to the recommendation within ten (10) days pursuant to 28 U.S.C. §

636(b)(1)(C). Ammerman filed objections on February 11, 2008. Having conducted an

independent review of the record, the Court concludes that the recommendation of the

Magistrate Judge is correct and should be adopted.

I.      Facts

On September 21, 2006, law enforcement officers in Morgan County, Missouri,

1

received information of suspected drug activities at 28592 Jewell Road. At the time a warrant to search the residence had been obtained, police knew that there had been traffic at odd hours from an "unconfirmed informant." (Doc. 59, 1). Police "believed William Armstrong and Jeannette McDonough" lived at 28592 Jewell Road. (Tr. 5).[1] Police also knew that the residence at 28592 Jewell Road "was in the name of" Florence Penny, Jeanette McDonough's grandmother. (Tr. 18). Police knew that Armstrong was "living at several residences"; Jeanette McDonough gave 28592 Jewell Road as "her place she was now staying" and that Armstrong and McDonough "as they have for many years, live together." (Tr. 19). Police also knew that Jeanette McDonough had been arrested earlier on September 21, 2006, when marijuana was found in her purse when she reported for a routine drug test. (Tr. 20).

Based upon the information, officers obtained and executed a search warrant at 28592 Jewell Road on September 21, 2006. Defendant Ammerman was not a target of the warrant. While Deputy J.D. Williams was inside the residence, a cell phone rang at approximately 4:50 p.m. Williams answered the phone by saying something like, "hello." The caller did not identify himself, but stated he had been trying to reach him. The men held a short conversation about getting together, and they ended with the caller telling Williams "I'll just come to the house and you run out real quick" and the caller would be there shortly. (Tr. 6). The caller did not know he was talking to Williams, a law

---

[1]Williams later stated "it was the Armstrong residence." (Tr. 16).

Case 2:06-cr-04075-NKL   Document 73   Filed 03/31/08   Page 2 of 8

enforcement officer who did not identify himself. Williams "took the call to mean that [the caller was] going to deliver drugs" although Williams' recollection of the call did not include any discussion of money, drugs or a transaction. (Doc. 59, 2). After the call, Williams went outside the residence and told Chief Deputy Dave Salzman and other deputies that were outside the residence on the road that he believed a drug delivery was going to take place very quickly and to watch for any vehicles coming to the residence. (Tr. 6-7).

The house on Jewell Road is in a rural setting, and Jewell Road is a narrow, single-lane roadway. It is not wide enough to allow vehicles to pass each other and is posted as a one-way road. To reach southbound Jewell Road or southbound Johnson Road, a vehicle has to travel north on Jersey Road. During the search and while officers were watching for the caller to arrive, law enforcement vehicles were parked in the roadway in front of the residence. As a result, Jewell Road was blocked. Ten minutes after the call, a red truck was seen on Jersey Road. (Doc. 59, 2). It was the only vehicle seen traveling in the area at the time, and it did not turn down Jewell Road, but turned on Johnson Road. Ammerman claims that "it would have been natural for an occupant of the truck to" leave the area via Johnson Road after seeing that Jewell Road was rendered impassable by police. (Doc. 59, 2).

Missouri State Water Patrol Officer Jason Worthley saw the pickup truck. He had been advised by Salzman to attempt to identify anyone who approached the house. The pickup was the only vehicle seen traveling in the area after the telephone call, and it was

3

possible the driver could have seen the law enforcement vehicles blocking Jewell Road because they were visible from Jersey Road. Although he lost sight of the vehicle for a short time, Worthley got into his own vehicle and followed the path he believed the truck had taken. When he found the truck at Moffett Point Road and Highway P, he stopped it. The truck had not violated any traffic laws and Worthley only stopped the truck because he was directed to do so. (Doc. 59, 3).

The driver was Defendant Michael Ammerman. Ammerman responded to the officer's questions, and said he had been going to see Armstrong, that Armstrong's wife was in jail and he was going through a hard time. Worthley could smell a strong odor of marijuana in the truck, and after running a check on the driver and vehicle, requested consent to search it. Ammerman consented to a search. When nothing illegal was found, Worthley let Ammerman leave the area. Worthley testified it had rained off and on all day, heavily at times, but that it was not raining at the time of the traffic stop. During the traffic stop, Worthley communicated with Morgan County personnel by radio, and other officers who were monitoring the radio were aware Ammerman had been stopped. Officer Lutz knew Ammerman had a drug history. When he heard Ammerman had been stopped, he decided to walk down the road where the truck had traveled. He got into his vehicle, went to the intersection, parked and then began to walk down Johnson Road. As he walked, he saw a light colored towel near a utility pole. The towel was folded up and dry. Lutz carefully unfolded the top, and found what appeared to be marijuana and other substances. He notified officers by radio that he had found something and requested they

4

send someone from the drug task force.  He also checked at the two nearby homes, and did not find anyone at home.

By the time the towel was found, Ammerman had been released from the traffic stop.  Based upon the information available to them, Salzman and someone from the drug task force made a decision to arrest Ammerman. Officers were notified to watch for Ammerman and arrest him if he was seen.  Later that evening, Ammerman was arrested by an officer in Versailles, Missouri.

## II.    Discussion

Ammerman's sole challenge to the evidence against him is that the police lacked any reasonable suspicion of criminal activity and/or probable cause to stop his vehicle. (Doc. 59, 3).  Based on the stop, Officer Worthley learned that Ammerman was going to see Armstrong; that Ammerman had a drug history; and, these discoveries led Detective Lutz to discover the towel containing drugs.

A law enforcement officer may detain a person for investigation without probable cause to arrest if the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'". *United States v. Sokolow,* 490 U.S. 1(1989). Whether the facts known to the officer amount to particularized and objective for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances. *United States v. Garcia,* 23 F.3d 1331,1334 (8th Cir. 1994).  Officers have probable cause to make a warrantless arrest when they have trustworthy information that would lead a reasonable person to believe the suspect has committed a crime. *United States v.*

5

*Cardenas-Celestino*, 510 F.3d 830, 833 (8th Cir. Jan. 8, 2008) (citing *United States v. Sherrill*, 27 F.3d 344, 347 (8th Cir. 1994). When weighing the totality of the circumstances, the Court gives due weight to the inferences police officers could draw from their general experience. *Id.* There does not have to be an actual showing of criminal activity, but there must be "a probability or substantial chance of criminal activity." *United States v. Torress-Lona*, 491 F.3d 750, 756 (8th Cir. 2007).

The magistrate judge is correct that, in this case, inferences drawn from the officers' experience and the probability of criminal activity support a determination that Ammerman had committed a crime. During a drug investigation and search at the Armstrong residence, officers received a telephone call where the caller indicated he was coming by the residence and the person answering the phone should "run out real quick." The general tone of the conversation led the officers to believe that a drug transaction was being scheduled. Officers watched for a vehicle, and the only vehicle seen traveling in the area was a red pickup truck. It was on the only road allowing access to Jewell Road. The truck did not turn down Jewell Road, which was blocked in front of the residence, but turned down Johnson Road. An officer followed it and made a stop to identify the driver. The stop for further investigation was justified by reasonable suspicion that the occupant was, in fact, the party delivering drugs to the residence. Once the driver was identified, other officers learned by radio that it was Defendant Ammerman. Officers knew Ammerman had a criminal history related to drugs. With Ammerman's consent, his truck was searched and when no contraband was found, he was allowed to leave. His

6

admission that he was going to visit Armstrong is thus admissible. Officer Lutz knew of Ammerman's criminal history. He inferred from his law enforcement experience that contraband might have been tossed from the truck if Ammerman had seen the officers' vehicles and decided to abort a drug delivery. He decided to walk down the road the truck had traveled. When he did so, he found a dry towel near a utility pole. It had rained earlier in the day, and officers could infer that the dry towel indicated it had not been there long. When it was examined, the towel contained illegal drugs. Ammerman's truck was the only one seen traveling on the road near the time the towel was found and after the last significant rain. There were no drugs in the truck when it was searched, although it smelled strongly of marijuana. Ammerman had told Officer Worthley that he had been headed to Armstrong's house, even though he had not turned down Jewell Road. Thus, officers could reasonably infer that Ammerman had made the call, aborted his visit when he saw law enforcement vehicles in the area, and tossed the drugs as he traveled out of the area. Given the totality of the circumstances, including Ammerman's known criminal history, his admission that he was headed to the house being searched because of suspected drug activity, the drugs found on the path he had driven and the other factors set forth above, the Court finds officers had probable cause to believe Ammerman had engaged in criminal activity and to make a warrantless arrest.

Accordingly, it is

ORDERED that Judge Knox's Report and Recommendation of January 31, 2008 [Doc. # 57], is ADOPTED.

                                       s/ Nanette K. Laughrey

                                       NANETTE K. LAUGHREY

                                       United States District Judge

Dated: March 31, 2008
Jefferson City, Missouri

Case 2:06-cr-04075-NKL   Document 73   Filed 03/31/08   Page 8 of 8